IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2002

## STATE OF TENNESSEE v. JOHN LESLIE GEORGE

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-500-166-C    Timothy L. Easter, Judge**

**No. M2001-01213-CCA-R3-CD - Filed February 3, 2003**

The Defendant was indicted for aggravated rape, aggravated robbery, and theft of property valued over $500. The Defendant pled guilty to facilitation of aggravated rape and to aggravated robbery. Following a hearing, the trial court sentenced the Defendant to eleven years for facilitation of aggravated rape and to eleven years for aggravated robbery. Pursuant to the plea agreement, the trial court ordered that the two sentences run concurrently. However, the trial court ordered that the sentences run consecutively to prior sentences in Humphreys and Dickson Counties. The Defendant now appeals, arguing that the trial court erred by imposing an excessive sentence. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

John H. Henderson, Jr., District Public Defender (on appeal), and C. Diane Crosier, Assistant District Public Defender, Franklin, Tennessee (at trial), for the appellant, John Leslie George.

Paul G. Summers, Attorney General; Elizabeth B. Marney, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katharine Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I. FACTUAL BACKGROUND

The following evidence was presented at the sentencing hearing: Amanda Acey testified that she worked as a cashier at the Highway 96 Market in Williamson County from March of 1999 until the offenses in this case. She stated that she normally worked from 2:30 p.m. until 10:00 p.m. and that she usually left the store around 10:30 p.m. Acey recalled that on January 10, 2000, her boyfriend, Frank Powell, came to the store around 9:30 p.m. to keep her company until closing. She

reported that the business at the store was "real slow" that evening and that she and Powell were sitting at a table in the store.

According to Acey, just before closing time, the Defendant and a man named Chris Smith entered the store to buy power steering fluid. Acey testified that Smith pointed a gun at them and asked who was the cashier. She stated that the Defendant tried without success to open the cash register. Acey testified that with Smith behind her, she stood up and opened the register. She reported that Smith then told her and Powell to follow him, and he would not hurt them. Smith took Acey and Powell to the back of the store. Acey testified that Smith motioned for Powell to go into the women's restroom, but Smith would not let Acey follow. She stated that Smith had his arm around her throat.

Acey testified that Smith took her into the men's restroom, and the door automatically closed. She recalled that once inside the restroom, Smith pointed the gun at her and told her that if she screamed, he would kill her. Acey testified, "All I could do was beg him not to hurt me." She reported that Smith told her to get undressed. Acey testified that she eventually started to take off her shirt and that by that time, Smith had already removed her pants. She stated that Smith pushed her to the floor and removed his "hunter jumpsuit" down to his knees or ankles. Smith had placed the gun on the sink. Acey testified, "He raped me."

Acey stated that it "seemed like an eternity" that they were in the restroom. She recalled hearing someone outside the restroom beating on the door and telling Smith to hurry. Acey testified that Smith put on his clothes and left the restroom. She reported that after Smith left, she heard Sgt. Jerome Holt in the hallway. Acey stated that she put on her clothes and told Holt that Smith had raped her. She recalled that Powell then called 911.

Acey testified that the Defendant and Smith took approximately $600 and possibly some cigarettes from the store. She stated that she never saw Timothy Moore, who was also indicted in this case. Acey testified that her head and back were bruised from Smith pushing her to the floor in the restroom. She further testified regarding the effects of the rape, "I'm afraid to walk out my own door because I'm afraid that someone else is going to hurt me that way." Acey stated that she could not go back to work and that it was "hard to even go in a grocery store by [herself]." She testified that she did not believe she would ever "get over" what happened to her. Acey stated that rape is "the worst thing that can happen to any woman." Finally, she testified that because she and Powell complied with all the perpetrator's instructions, Smith and the Defendant could have left the store without hurting anyone.

Captain Ricky Headley of the Fairview Police Department testified that he was the chief investigator in this case. He stated that he took a written statement from the Defendant on January 14, 2000. In the statement, the Defendant admitted robbing the store. Headley testified that the Defendant acknowledged that Smith went into the bathroom with Acey, but maintained that he did not know about the rape until later. According to Headley, the Defendant knocked on the bathroom door, but Smith did not immediately come out.

Detective Michael Hooper of the Humphreys County Sheriff's Department testified that he was the lead investigator in a case in Humphreys County involving the Defendant, Smith, and Moore. He testified that he had worked with investigators from Williamson, Dickson, and Humphreys Counties to solve a series of robberies. Hooper stated that he interviewed the three men after their arrests, and their statements were introduced into evidence. He testified that the crime spree involving the Defendant, Smith, and Moore began on Thursday, January 6, 2000 when the threesome robbed a store in Jackson, Tennessee. Hooper testified that the following night, the three men robbed a store in Humphreys County and then robbed a store in Dickson County on Saturday night. He testified that the robbery and rape in this case occurred on Monday, January 10, 2000. Hooper testified that the three men were finally caught after they robbed a store in New Johnsonville on Wednesday, January 12, 2000. Hooper reported that the same two men did not always go into each store.

Mary George, the Defendant's mother, testified that she lived in Humphreys County. She stated that she separated from the Defendant's father when the Defendant was three or four years old and that she never remarried. George testified that at some point, she was having "a hard time," so the Defendant went to live with her brother. George testified that while the Defendant was gone, she tried to get a job. She testified that the Defendant had three brothers and one sister.

George testified that the Defendant was a "good kid." She stated that he generally behaved and that he did well in school until he began skipping school in the ninth grade. George reported that the Defendant was charged with truancy. She stated that the Defendant "just quit" school after the ninth grade when he was seventeen years old. George maintained that there was no indication that the Defendant had used drugs. She stated that she "couldn't believe" what happened. George testified that the Defendant was never violent and that he was seventeen years old at the time of four out of five of the robberies. She stated that she thought the Defendant was sorry about what had happened. On cross-examination, George testified that she was not aware that doctors who had talked to the Defendant had stated that he had no remorse.

Carolyn Reese, the Defendant's aunt, stated that the Defendant had lived with her and her husband for a period of time. She testified that the Defendant helped in her husband's salvage yard and that he did not cause any problems. Reese testified that the Defendant was remorseful for his actions. On cross-examination, Reese acknowledged that she did not know about the Defendant's use of drugs and alcohol.

## II. ANALYSIS

The Defendant argues that the trial court erred by sentencing him to eleven years for each conviction and by ordering that the sentences run consecutively to prior sentences in Humphreys and Dickson Counties. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court

considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In the event that the record fails to show such consideration, the review of the sentence is purely de novo.  State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result."  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  The defendant bears the burden of showing the impropriety of the sentence imposed.  Ashby, 823 S.W.2d at 169.

## A. Length of Sentence

The Defendant argues that the trial court erred by sentencing the Defendant to eleven years for each of his convictions.  The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present.  Tenn. Code Ann. § 40-35-210(c).  The presumptive sentence for a Class A felony is the midpoint of the sentencing range unless there are enhancement or mitigating factors present.  Id.  If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors.  Id. § 40-35-210(e).  The weight to be given each factor is left to the discretion of the trial judge.  Shelton, 854 S.W.2d at 123.  However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act.  State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

Enhancement factors must be "appropriate for the offense" and "not themselves essential elements of the offense."  Tenn. Code Ann. § 40-35-114.

> The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense.  Facts which establish the elements of the offense charged may not also be

the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

In this case, because the Defendant pled guilty as a Range I, standard offender to two class B felonies, the range of punishment is eight to twelve years for each offense. See Tenn. Code Ann. § 40-35-112(a)(2). The trial court found that the Defendant had "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Id. § 40-35-114(1). The trial court weighed this factor heavily and noted that the Defendant admitted to using drugs since he was fifteen years old. Testimony at the sentencing hearing indicated that the Defendant, Smith, and Moore used the proceeds from the robberies to buy drugs. In addition, the offense in this case was part of a week-long crime spree involving four other robberies. We conclude that the trial court properly applied this factor.

The trial court also found that "[t]he offense involved more than one (1) victim." Id. § 40-35-114(3). The trial court noted that Amanda Acey and her boyfriend, Frank Powell, were both in the store during the robbery. Acey testified that Smith forced Powell into the women's bathroom while he took her into the men's bathroom and raped her. We conclude that the trial court properly applied this factor.

Regarding mitigation, the trial court found that the Defendant had shown remorse and that he was willing to take responsibility for his actions. See id. § 40-35-113(13). However, the Defendant argues that the trial court erred by not considering that the Defendant, "because of youth . . . , lacked substantial judgment in committing the offense." Id. § 40-35-113(6). "In determining whether this factor is to be applied, courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). The Defendant's circumstances do not demonstrate an inability to appreciate the nature of his criminal conduct due to age, and the record does not support the contention that the Defendant lacked substantial judgment to appreciate the nature of his conduct. The offenses in this case were committed one day prior to the Defendant's eighteenth birthday. We conclude that the trial court properly declined to consider

this factor. We also conclude that the trial court properly weighed the enhancement and mitigating factors in determining that the Defendant be sentenced to eleven years for each conviction.

## B. Consecutive Sentencing

The Defendant also argues that the trial court erred by ordering that his sentences run consecutively to prior sentences imposed in Humphreys and Dickson Counties. It is within the sound discretion of the trial court whether or not an offender should be sentenced consecutively or concurrently. State v. James, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
>
> (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity; the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) [t]he defendant is sentenced for an offense committed while on probation; or
>
> (7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7). In addition to these criteria, consecutive sentencing is subject to the general sentencing principles providing that the length of a sentence should be "justly deserved in relation to the seriousness of the offense," id. § 40-35-102(1), and "no greater than that deserved for the offense committed." Id. § 40-35-103(2); see also State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002).

In determining that the Defendant's sentences in this case should run consecutively to prior sentences in Dickson and Humphreys Counties, the trial court found that the Defendant's "record of criminal activity is extensive." Id. § 40-35-115(b)(2). The trial court noted that the offense in this case was one of a series of robberies spanning almost a week. In addition, the Defendant admitted that he had used various illegal drugs since he was fifteen years old. We conclude that the trial court properly found that the Defendant had an extensive criminal history.

The trial court also found that the Defendant was "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Id. § 40-35-115(b)(4). However, if the court concludes that a defendant is a dangerous offender under Tennessee Code Annotated § 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. Imfeld, 70 S.W.3d at 708. First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The trial court found that an extended sentence was necessary to protect the public from further criminal conduct. The trial court noted that the Defendant went on a crime spree that continued for almost a week and spanned four different counties. Evidence was presented that the proceeds of the robberies went to purchase drugs. The trial court also found that a consecutive sentence was reasonably related to the severity of the offense. See id. The Defendant and two others robbed a convenience store at gunpoint. In addition, one of the co-defendants raped the cashier of the convenience store. Evidence was presented that the Defendant was aware that the co-defendant was alone with the cashier in the men's bathroom. We conclude, as did the trial court, that the Defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. See Tenn. Code Ann. § 40-35-115(b)(4). We find no error by the trial court in sentencing the Defendant.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE